# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

DAVID EUGENE BAILEY, )
)
    Plaintiff, )
)
v. ) No. 4:10CV1191 JCH
)
BONNE TERRE MENTAL )
HEALTH MANAGER, et al. )
)
    Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 363348), an inmate at Potosi Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.71. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess

and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $8.57, and an average monthly balance of $.46. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $1.71, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact."

Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are: Bonne Terre Mental Health Manager; Unknown Atterberry (doctor); Head Nurse/Scheduling Manager at Northeast Correctional Center ("NECC"); Western Missouri Correctional Center ("WMCC") Medical Director; and Correctional Medical Services ("CMS").

In his complaint for monetary damages, plaintiff asserts that in November of 2005 he was discriminated against on the basis of his mental health disability in that he was refused access to the special needs unit by the Bonne Terre Mental Health Manager at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"). Plaintiff claims that as a result of his exclusion from the special needs unit, he became mentally unable to live in the general population and was placed in segregation/solitary confinement. Plaintiff asserts that his placement in solitary confinement restricted him from various activities, while "disabled inmates got to go out every day and play basketball, walk the court, got to the gym, and watch TV."

Plaintiff makes general claims against the "WMCC Medical Director" relating to an injury he suffered to his back sometime in 2008 while he was incarcerated at the Western Missouri Correctional Center. Plaintiff states, in a conclusory fashion, that he was denied treatment for his back when it seized up while he was picking up trash.

Plaintiff asserts that he was basically on bed rest during his injury, but that the injury eventually "cleared up on its own." Plaintiff does not state specifically who denied him treatment, only bringing the claim generally against the "WMCC Medical Director."

Similarly, plaintiff makes additional conclusory claims against the Head Nurse/Scheduling Manager at Northeast Correctional Center. Plaintiff asserts that while he was at NECC he was prescribed a sleep aid which he was supposed to take at 6:00 p.m. Plaintiff complains that the drug made him drowsy, and thus unable to wake up to return certain "pain patches" to medical in a timely manner. Plaintiff asserts that he suffered a whole host of deprivations as a result of his failure to timely return the "pain patches," including conduct violations, loss of an earlier parole date, placement in an isolation cell and loss of recreation time. Plaintiff states that he asked to have the sleep aid administered at a later time in the evening in order to allow him to comply with the return of the "pain patches." Plaintiff does not articulate, however, exactly who he asked or what he was told.

Lastly, plaintiff complains that in November of 2007, defendant Atterberry ignored another doctor's orders to keep him in a one person cell "pending medication/treatment for [his] diagnosed panic disorder, agoraphobia , social anxiety, major depression and bipolar [disorder]." Plaintiff claims that defendant Atterberry ordered that he be placed in a two-man isolation cell despite her knowledge that his

mental illness would worsen. Plaintiff claims that upon his "refusal" to go to "population" he was "repeatedly put in a strip cell without any clothes or bedding, with the water turned off and the window painted over...feces stayed in [his] toilet because it wasn't turned on to flush and guards continuously wrote [him] up for not going to population." Plaintiff claims that defendant Atterberry denied him access to the special needs unit and ordered punishment when he refused to be placed in the general population. Plaintiff asserts that as a direct result of defendant Atterberry's refusal to recognize and properly treat his disability, his mental illness continued to worsen.

Plaintiff seeks monetary damages and an order requiring the Missouri Department of Corrections to "treat all disabled inmates equally and keep them from just sticking us in the hole and forgetting us."

**Discussion**

Plaintiff claims against the Bonne Terre Mental Health Manager, which he states occurred in November of 2005, are barred by the five year statute of limitations for § 1983 actions. Sulik v. Taney County, Mo., 393 F.3d 765, 766-67 (8th Cir. 2005) (noting that section 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations); Mo. Rev. Stat. § 516.120(4).

Plaintiff's claims against CMS are also barred, as he has not made any direct claims against CMS, but appears to seek liability against CMS on a theory of respondeat

superior. See Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

Plaintiff's claims against the "WMCC Medical Director" relating to his alleged back injury are similarly subject to dismissal, as he has not articulated the specifics of his claim or indicated exactly who denied him treatment for his back and in what context. Just as with CMS, the "WMCC Medical Director" cannot be liable under a theory of respondeat superior. Id. Plaintiff's claims against the Head Nurse/Scheduler are subject to dismissal for these same reasons, as plaintiff has not articulated exactly who denied him a change in his medication schedule. Even if plaintiff had provided the names of those persons involved in the denial of the schedule change, his claim would still be subject to dismissal. As articulated, plaintiff is not alleging a denial of medical treatment, or that he suffered an objectively serious medical need and that some official knew about and denied treatment for the need. Rather, plaintiff's claim is that he was not allowed to choose the time he received treatment. "Mere disagreement with treatment decisions

does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). As such, plaintiff's claims against the Head Nurse/Scheduler at NECC are subject to dismissal.

Plaintiff's claims against defendant Atterberry, however, for discrimination on the basis of his disability (mental illness) are not subject to dismissal at this time. As such, the Court will order the Clerk of Court to issue process against defendant Atterberry.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.71 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Atterberry.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant Atterberry shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Correctional Medical Services, the WMCC Medical Director, Bonne Terre Mental Health Director, and Head Nurse/Scheduling Manager because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 23rd day of July, 2010.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE